*Bill dismissed with costs<br>for the respondents.*

APPLETON, C. J., WALTON, DANFORTH, LIBBEY and SYMONDS, JJ., concurred.

---

CHARLES H. SMITH in equity *vs.* JOHN M. SULLIVAN and others.

· Penobscot.   Opinion December 4, 1880.*

*R. S., c. 70. The assignment law repealed by the insolvent law.*
*Stat. 1878, c. 74. Law and equity.*

The assignment law, R. S., c. 70, so far as it applies to insolvent persons, is repealed by the insolvent law, stat. 1878, c. 74. Assignees, therefore, take no title to the property of an insolvent person, by virtue of his general assignment for the benefit of creditors, as against his creditors or assignee in insolvency.

In an action against persons, not parties as assignee, debtor or creditors, the jurisdiction of this court, as between law and equity, rests upon the general principles applicable and not upon stat. 1878, c. 74, § 11; and where the claim is substantially for an unauthorized intermeddling with the property, the remedy is at law and not in equity.

THE OPINION states the case.

*Wilson & Woodward*, for the plaintiff, in discussing the question of the effect of the insolvent law upon the assignment law, cited: *Knight* v. *Aroostook R. R.* 67 Maine, 291; *Commonwealth* v. *Kelliher*, 12 Allen, 480; *Norris* v. *Crocker*, 13 How. 429; Bump's Bankruptcy, 8th ed. 407.

---

* This case is reported in advance of its chronological order because of its general importance to the profession in this State. — REPORTER.

*Humphrey & Appleton,* for the defendants, Ivory W. Coombs and James P. Parker, and *Whiting S. Clark,* for the defendants, Alfred Jones and wife.

The provisions of R. S., c. 70, are not repealed by implication or otherwise by the insolvent act of 1878. The able and astute counsel for the complainant by the framework of their bill of complaint admit this. The insolvent courts do not by stat. 1878, c. 74, have *exclusive* but only *original* jurisdiction. The last clause of section one restricts the insolvent court from jurisdiction in a class or classes of "cases arising under the provisions of this act," "where it is otherwise specially provided."

If the legislature of 1878 intended that the insolvent law should repeal the assignment law, they would have said so. Their intention was manifestly the other way, from the restriction of jurisdiction in cases where "it is otherwise specially provided."

It is only where there is no intention, whatever, manifested by the legislature, by a saving clause of any sort to preserve former statutes in force, that a repeal by implication is allowed to operate. And when there is a saving clause or manifest intention to preserve former acts it must prevail, even at the expense of restraining the operation of the subsequent act. *Williams* v. *Pritchard,* 4 T. R. 3; *Rex* v. *Poor Law Com'rs,* 6 A. & E. 1; *Capen* v. *Glover,* 4 Mass. 305; *Pease* v. *Whitney,* 5 Mass. 380; *Commonwealth* v. *Kimball,* 21 Pick. 377; *Brown* v. *Lowell,* 8 Met. 174; *United States* v. *Claflin* 97 U. S. 551.

We ask the particular attention of the court to the case of *Carter* v. *Sibley,* 4 Met. 298, which involved the question of repeal of an assignment act by a subsequent insolvent act. See also, *Sturges* v. *Crowinshield,* 4 Wheat. 203.

"Acts *in pari materia* are to be taken together as one law, and are to be so construed that every provision in them may, if possible, stand. Courts, therefore, should be scrupulous how they give sanction to supposed repeals by implication." *Haynes* v. *Jenks,* 2 Pick. 176; *Commonwealth* v. *Crowley,* 1 Ashmead, 179; *Dr. Foster's Case,* 11 Co. 63; *Loker* v. *Brookline,* 13 Pick. 348; *Goddard* v. *Boston,* 20 Pick. 410; *Snell* v. *Manufacturing Co.* 24 Pick. 299.

DANFORTH, J. This is a bill in equity, to which a demurrer has been filed, and the object of which is to get possession of certain property or its proceeds alleged to have been obtained by fraud or for fraudulent purposes by two of the defendants, Coombs & Parker, assisted by the others. From the allegations in the bill it appears that on May 31, 1879, the copartnership then existing between John M. Sullivan and Alfred Jones was dissolved under an agreement by which Jones received all the partnership assets and agreed to assume all the partnership liabilities; that on June 4, 1879, Jones made an assignment under the law found in R. S., c. 70, for the benefit of his creditors to the defendants, Coombs & Parker. Under this assignment Coombs & Parker obtained possession of the partnership assets of Sullivan & Jones which is the property claimed by the plaintiff in his bill.

It further appears that on July 11, 1879, Sullivan filed in the insolvent court, in the county of Penobscot, his petition that the partnership previously existing between himself and Jones might be declared insolvent, and on the twenty-sixth of the same July, the said Sullivan & Jones, individually and as copartners, were adjudged insolvent by said court, and on the ninth of August following, the plaintiff was chosen and qualified as assignee, and received from the judge an assignment of the individual and partnership estate of Sullivan & Jones.

Thus independent of any allegations of fraud, we have here presented the question of title between these parties. The defendants claim by a prior assignment under R. S., c. 70; the plaintiff, by a subsequent one under the insolvent law of 1878. If the prior law is in force, the defendant's title is good, unless vitiated by fraud. If that law has been repealed, so far as it relates to insolvents, then they have no title, and it will be unnecessary to inquire into the effect of the allegations of fraud.

There is no law, which in terms repeals the prior act relating to assignments; if therefore it is not now in force, it must be because it is repealed by implication. There are two grounds upon which an existing statute may be thus repealed: when the later one covers the whole subject matter of the former,

especially when additional remedies or penalties are added, and when the later one is inconsistent with, or repugnant to the former; when either of these conditions are found, the later act must be considered as declarative of the will of the legislature. This principle has become so well settled that a discussion of it is unnecessary. *Knight* v. *Aroostook Railroad*, 67 Maine, 291; *Littlefield* v. *Paul*, 69 *Ibid.* 527; *Carter* v. *Sibley*, 4 Met. 298; *Norris* v. *Crooker*, 13 How. 438.

It is not now necessary that we should decide whether the former act is entirely repealed, so as to be of no force whatever. That is entitled, "assignment for the benefit of creditors." The act of 1878, relates to insolvents only. If, therefore, a debtor who is not insolvent, chooses for any reason, to make an assignment for the benefit of such of his creditors as may be willing to become a party to it, we have no occasion to say the law will not enforce it. But in this case, the owner of the goods in question has been adjudged an insolvent by the legally constituted tribunal.

The question then, is whether so far as insolvent debtors are concerned, the two laws embrace the same subject matter. By the express terms of the assignment law, its object and purpose is to provide for an equal distribution of all debtor's property among such of his creditors as become parties and all the provisions necessary to accomplish that object are made a part of the law. The act of 1878 has in view the same purpose including all the creditors with certain exceptions, with such provisions for its operation as are sufficient to make it complete in itself. It embraces all the provisions of the former, with more detail and additional remedies and penalties.

But in addition to this, the act of 1878 is so inconsistent with and repugnant to the former statute, that the two cannot have their "definite mode and scope of operation, without the slightest conflict with each other." There must be conflict from the beginning, and all the way through. In the one, the debtor on his own motion makes his assignment and chooses his own assignee. In the other, the court adjudicates as to the insolvency, and the creditors choose the assignee. The duties of these

different assignees are in direct conflict. The one is under the more immediate direction of the court, with no control over the amount of indebtedness to be allowed, but to distribute the assets as required in payment of such as is allowed. The other acting with more independence, himself in the first instance, the tribunal before whom the debts are to be proved, and distributing the property among such creditors only as become parties to the assignment.

But, without further discussion of the details of the two statutes, a cursory reading of which is sufficient to show the entire inconsistency of the proceedings under one, with those of the other, the control of the property alone is decisive. It cannot be in each so as to be administered in accordance with each law at the same time. Nor is it sufficient to say, as in the argument, that the first assignment takes precedence and leaves for distribution by the subsequent assignee, only the after acquired property. The act of 1878 is absolute and unconditional in its terms. It not only gives the assignee authority, but requires him to take possession of all the debtor's assets to be administered upon, and disposed of in accordance with its terms. Take the property in question in this case, it would clearly be assets under the insolvent law, but for the previous assignment. But that assignment makes it no less assets to pay all the debts. Still if the prior assignee is to retain it, the requirement of this fundamental principle of the act of 1878 with all the provisions growing out of it are made of no effect. If then, the assignment law is to remain in force, it will enable the debtor at his option, to render of no effect the plain and unqualified provisions of the insolvent law, and take from his creditors, property which belongs to them, or compel them to become parties to his assignment, which would equally deprive them of remedies and penalties provided for their benefit. We nowhere in this law find any ground for supposing such to have been the intention of the legislature.

The argument founded upon the clause, "except where it is otherwise specially provided" in § 1, of the act of 1878, cannot avail. This in no respect limits the force or application of the

law, but refers only to the jurisdiction of the court. That is to have original jurisdiction, unless otherwise specially provided.

But if it were not so, the result must be the same. The assignment law is not a special provision relating to any particular person or class, as is that which provides for insolvent insurance companies, or for persons under guardianship; but is general in its application, as much so as is the act of 1878, embracing in its provisions, the same persons, and is co-extensive with it. If therefore, it was excepted by virtue of this clause, nothing would be left, upon which the later law could operate. This cannot be supposed to be the intention of the legislature.

We are thus necessarily brought to the conclusion, that the assignment law, so far as it relates to insolvent persons, is repealed by the act of 1878, and that Coombs & Parker, independent of any charges of fraud, take nothing by virtue of the assignment of Jones to them. Hence, whatever claim the plaintiff may have upon them, or their associates, is one for damage for wrongful conversion, or an action of replevin for the property itself. In either case, the remedy at law, would seem to be plain and adequate to secure whatever rights he has.

It is true that by § 11, of the act of 1878, c. 74, as amended by § 3, c. 154, of the acts of 1879, "the Supreme Judicial Court shall have full equity jurisdiction in all matters arising under this act"; which powers "may be exercised . . . in term time or vacation upon bill, summary petition, or other proper process." This clause refers to cases involving the rights of the assignee debtor and creditors, as between themselves, in the management and distribution of the assets. These persons are parties to the proceedings from the beginning, so much so that they may be liable to be brought in upon summary proceedings upon any proper process. The claim involved in this case, is one against outside parties, who can be compelled to answer only upon ordinary process, such as is known to the law regulating proceedings in court. It is provided for in § 32, which gives the assignee "power to maintain in his own name, all suits at law and in equity, for the recovery and preservation of the insolvent estate;" leaving it to the general principles

applicable, to decide whether his remedy shall be in law, or in equity. In this case, whatever remedy he has, is clearly at law. *Smith* v. *Mason*, 14 Wallace, 419 ; *Marshall* v. *Knox*, 16 *Ibid.* 551.

Nor can this court, under this process, order the assignee to hold and distribute the proceeds as partnership assets. He is equally entitled to the property, whether it belongs to the partnership, or to Jones as an individual, and whether he shall distribute the proceeds to one set of creditors or the other, may be decided upon a proper process to which the creditors are parties and where they can be heard.

*Bill dismissed with costs.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.