## Goff v. Moore.

### Same v. Same.

(Decided January 28, 1927.)

### Appeals from Oldham Circuit Court.

1. Reformation of Instruments—Mutual Mistake is Necessary to Warrant Reformation of Writing.—Mutual mistake is necessary in order to warrant reformation of a writing.

2. Reformation of Instruments—Evidence Held Not to Show Mutual Mistake or Fraud in Securing Deed from Vendor to Subsequent Purchaser Reserving Lien to Original Purchaser.—Evidence held not to show mutual mistake or fraud of purchaser in securing deed from grantor to subsequent purchaser reserving to original purchaser lien for part of purchase price on equality with that of vendor.

3. Fraud—Fraud is Not Presumed.—Fraud will not be presumed, but must be established by evidence.

4. Compromise and Settlement—Agreement, Settling Suit, Held Sufficient Consideration for Agreement of Vendor and Purchaser to Accept Reconveyance from Subsequent Purchaser in Proportionate Shares.—Settlement agreement between vendor and purchaser in avoidance of further costs and counsel fees in prosecution of action held sufficient consideration for agreement whereby parties agreed to accept reconveyance from subsequent purchaser in proportion to respective liens thereon.

5. Execution—Land Sold at Judgment Sale Must Bring Two-Thirds of Appraised Value.—Trial court should have sustained exceptions to judgment sale, where land sold did not bring two-thirds of appraised value.

ALLEN, BOTTS & DUNCAN for appellant.

ROBERT T. and WM. J. CROWE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing both judgments.

In November, 1919, the appellee and plaintiff below in the first appeal in the caption, and who is also the appellee and defendant below in the second appeal in the caption, Emma H. Moore, owned a tract of land in Oldham county, consisting of 267 acres, and she sold it at public auction, at which the appellant, Thomas Goff, bid $21,693.75, and being the highest one it was sold to him, and pursuant to the terms of the sale he then and there paid Miss Moore 10% of his bid, with the understanding and agreement, which was also a part of the terms of sale, that a deed would be made to him on March 1, 1920, when he would comply with the further terms of the sale by executing notes for the deferred payments. Before the time arrived for the execution of the deed by Miss Moore and the execution of the notes by Mr. Goff, the latter contracted to sell the land to one A. R. Bondurant for a total consideration of $24,500.00, with a cash payment of $6,000.00, and Miss Moore was notified of that fact and correspondence ensued concerning it, she at the time being located either permanently or temporarily at West Palm Beach, Florida. She finally agreed to the novation and signed and acknowledged a deed to Bondurant pursuant to the terms that had been agreed upon between him and Goff, and which deed was dated March 1, 1920, and recited as deferred payments that Goff had agreed to pay Miss Moore and for which Bondurant executed his

notes to her, and likewise a note for the additional consideration of $3,859.50, payable to Goff on or before March 1, 1923, and representing in part his profits and what he had paid out; and that note in the deed was made a lien equal in dignity with the deferred payments to Miss Moore. Bondurant took possession of the land thereafter and held it for about a year, his cash payment being mostly if not entirely paid to Miss Moore, and at the end of that time he abandoned the farm and moved to California.

There was a precipitation clause whereby all the deferred payments might be declared by the holder as due and with the right to proceed to collect them and enforce the lien retained on the land, if any one of them should be due and unpaid. Under that right Miss Moore on December 27, 1921, filed her equity action in the Oldham circuit court against Bondurant and Goff wherein she set out the facts and her election to declare all of her notes as due, and also alleged that Goff held a lien upon the property and called upon him to assert and set it up, which he afterwards did by answer and cross-petition against Miss Moore, and which answer claimed a lien in his favor of equal dignity with the Moore lien. Plaintiff's reply to that pleading was made a cross-petition against Goff and in it she made these allegations: "Plaintiff says that said deed (to Bondurant) was prepared without her knowledge or consent and was sent to her by mail and by *oversight* and *mistake* she signed and acknowledged the same, and that she did not learn until the last six months that the defendant, Goff, was claiming a lien of equal dignity with her own, or that the terms of the deed so provided; that said *deed* is a *fraud upon her rights*, and does not conform to the agreement entered into between her and the defendant Goff (at time of auction sale) and the provision creating the lien in favor of said defendant, Thos. Goff, is without consideration passing between this plaintiff and said Goff, and is void and of no effect between them. She says that by reason of the foregoing facts and the agreement as set out above (auction sale) her lien as set out in the petition is superior to that of the defendant Goff, as set out in the answer, and she asks the court to so adjudge." (Our italics.) It was followed by a prayer that the deed to Bondurant be altered to conform to these allegations and that her lien be adjudged superior to that of Goff.

Appropriate pleadings made the issues, and before any proof was taken negotiations began between appellant and appellee looking to a settlement of their differences, but in the meantime plaintiff filed an amended petition making practically the same averments as contained in her reply. It was suggested by Goff in the negotiations for settlement that it would be to the interest of both appellant and appellee that the litigation should terminate without the incurring of further costs and attorneys' fees, and to avoid a sacrifical judicial sale of the property it was suggested by him that they procure a joint deed from Bondurant conveying to each of them an undivided interest in the tract proportioned to their respective debts and liens against it as stated in the deed of Miss Moore to Bondurant, and to which she agreed and the parties executed a writing to that effect on April 12, 1922, and that agreement was followed by a deed from Bondurant to both appellant and appellee, in which it was recited that the conveyed land is "to be held and owned by them in undivided interests, in proportion to the present indebtedness of the said A. R. Bondurant to them, respectively, and secured by a lien on said land." It was also a part of the agreement, and so recited in the deed, that all of Bondurant's notes should be surrendered to him and his indebtedness incurred for the purchase of the land should be canceled. That deed bears the same date as the written agreement, but as a matter of fact it was executed much later though, perhaps, prepared at the same time. It was a part of the written agreement of settlement that if Bondurant should execute a deed to the parties as therein set forth then the action of Miss Moore to foreclose her lien should be dismissed by appellant, and she and appellee would pay an aliquot part of the costs, proportioned to their interests as measured by their respective liens. It was further stipulated in that agreement that if it should be carried out by Bondurant conveying the land as stated (and which as we have said was done) then the parties should hold it jointly for a period of as much as ten months, during which time an effort would be made to sell it at private sale, and after that time if it should not be sold it should be divided in kind in proportion to the respective interests of the vendees, and which might be done by proceeding in court if the parties could not themselves agree.

After the deed was obtained from Bondurant, and as we understand the record, before any testimony was taken, Goff filed an amended answer and cross-petition in which he set up the written agreement to settle the litigation and the obtention of the deed from Bondurant pursuant thereto, and asked that the action be dismissed according to the terms of the agreement. Responding to that pleading, which Miss Moore styled an amended petition, she attacked both the agreement and the deed from Bondurant to her and Goff as being without consideration and void insofar as they or either of them attempted to convey or create a lien in favor of Goff equal to hers, and she alleged that his lien was inferior to hers. That pleading was demurred to, but it was overruled and it was afterwards denied. There were likewise demurrers to the other pleadings of plaintiff, and which were overruled, and motions to strike therefrom shared a similar fate. Before the cause was submitted Goff filed an independent petition against Miss Moore in which he recited the written settlement agreement, to which we have referred, as well as the deed from Bondurant executed pursuant thereto, and that ten months had expired without a sale of the land, and he asked for a judgment of division in accordance with the terms of the agreement, and by an order of court the pleadings of Miss Moore in the other action were considered filed in the latter one. The cases were then consolidated and after evidence taken they were submitted and the court by its judgment reformed the Bondurant deed by adjudging the lien of Miss Moore superior to that of Goff, and ordered the land sold for the purpose of satisfying her liens first, and second, that of Goff. It was further adjudged that Bondurant had satisfied his indebtedness to both parties by the execution of his deed, and the latter action by Goff to obtain a division of the land was dismissed.

The land was sold by the commissioner and it was purchased by Miss Moore for the sum of $6,125.00, although it was duly appraised at $13,350.00. Goff filed exceptions to that sale, some of which were based upon his objections urged against the judgment, and one of which was because the land failed to bring two-thirds of its appraised value; but the exceptions were overruled and the sale was confirmed. The first appeal in the caption is from the judgment, and the order of confirmation of the sale; while the second one is from the order dis-

missing the petition of Goff seeking to divide the land in accordance with the interests of the parties and pursuant to the terms of the above mentioned settlement agreement.

We have searched this record in vain and have failed to find in any pleading filed by appellee a charge of mutual mistake on the part of or between any of the parties to the litigation, and which character of mistake is necessary in order to obtain a reformation of a writing. Robinson v. Eastern Gulf Oil Co., 196 Ky. 385. Neither have we been able to find any apt charge of any fraudulent act upon the part of the appellant, Goff, either in obtaining the execution of the deed to Bondurant on March 1, 1920, or in the obtention of the written agreement of April 12, 1922, or the joint deed from Bondurant pursuant to that agreement which bore the same date, but in fact executed much later. Robinson case, *supra,* and Whitt v. Whitt, 145 Ky. 367. It is true that as to the two latter writings, it is charged by Miss Moore that they were without consideration, and also that they and the original deed to Bondurant were a fraud upon her rights, and that as to her they were executed through a mistake (only) on her part and which we construe as a subsequent conclusion on her part, and because of the fact that the price of the land had declined and she realized there was a possibility that it would not sell for enough to pay her debt and that of Goff.

But, putting aside the condition of the pleadings, and conceding for the purposes of the case that they were sufficient to raise the question of fraud and mutual mistake, we then find a total dearth of evidence upon either of those issues. It is true that after the first action was filed by Miss Moore, and it had been answered by Goff claiming a lien upon an equality with hers, she expressed in one of her letters great surprise, but she admits in her testimony that the deed to Bondurant, wherein the equality was created, was kept by her some three or four days before she signed and acknowledged it, during which time she consulted an attorney and her banker upon the propriety of executing it, and afterwards concluded to and did do so. If, however, we should concede for the purposes of the case that she testified to enough to substantiate the also conceded sufficiently pleaded issues of fraud and mutual mistake in the execution of the deed to Bondurant, then we are confronted with the fact that two

years, one month and twelvve days thereafter she executed the written agreement, which expressly stipulated for an equality of liens and title, and it was followed later by the deed from Bondurant to the same effect. After entering into that agreement she wrote her counsel to surrender the Bondurant notes that they might be delivered to him in consideration of his deed to her and Goff, and that was done when the deed was executed.

It is not necessary for us to incorporate in this opinion any of the letters that passed between the parties during the negotiations and which culminated in the execution of the agreement as well as the deed from Bondurant. It is sufficient to say that they do not disclose any effort on the part of Goff to deceive or mislead Miss Moore, nor do they disclose any mistake on her part, particularly as to the execution of the settlement agreement, which, perhaps, was also preceded by her consulting with her attorney in Florida, and certainly so by her consulting with her banker. We have time and again announced the rule to be that fraud will not be presumed, and if the pleadings in this case were sufficient to charge it against Goff then the evidence wholly fails to establish it. See Robinson and Witt cases *supra,* and Daniel Boone Coal Co. v. Crawford, 203 Ky. 666.

But it is strenuously contended that the stipulation in the deed to Bondurant for a lien in favor of Goff with equal dignity with the one in favor of Miss Moore, and the one confirming that fact in the agreement and in the deed from Bondurant to them, were each without consideration, and therefore unenforceable; and it is also contended that the same vice enters into the stipulation of the agreement whereby the parties were to share the title to the land if reconveyed by Bondurant in proportion to their respective debts. We find ourselves wholly unable to agree with counsel on those contentions. The deed to Bondurant was but a novation of the debt of Miss Moore and unless fraudulent (which we have found is untrue) was and is a sufficient consideration. Russell v. Centers, 153 Ky. 469, and Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21. But if it were not so, and if at that juncture of the contractual relations of the parties Miss Moore could have repudiated that deed for want of consideration or other grounds, she certainly can not do so after having ratified it by the execution of

the settlement agreement followed by Bondurant's deed pursuant thereto. That the agreement was supported by sufficient considerations there can be no doubt. A sufficient one was the avoidance of further costs and counsel fees in the prosecution of the first action filed by Miss Moore, and thereby providing a method by which a sacrificial decretal sale of the land would be dispensed with and the parties given an opportunity to realize a larger price for the land at private sale, but if unsuccessful to then divide it. She also thereby obtained title instead of only a lien. We, therefore, conclude that this contention is without merit, and that being so, it necessarily follows that the same contention as it relates to the deed from Bondurant should also be similarly determined.

We have not gone into the details of either the pleadings or the evidence, but have sufficiently stated the substance of both to present the legal questions as well as the facts contained in and disclosed by the record, and in view thereof it becomes apparent that the court erred in declining to dismiss the first action pursuant to the pleadings of Goff asking that it be done; and also erred in failing to sustain the exceptions to the sale, if for no other reason because the land did not bring two-thirds of its appraised value. Likewise, the court erred in dismissing the action filed by Goff (which is the second appeal above) seeking a division of the land after the expiration of the 10 months from the date of Bondurant's deed, and in failing to adjudge an accounting between the parties as therein prayed.

Wherefore, the judgment in each action is reversed, with directions to dismiss the one filed by Miss Moore, and which is the first one in the caption, and to proceed with the one filed by Goff in conformity with this opinion.